UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IGNITION ATHLETIC PERFORMANCE
GROUP, LLC,

      Plaintiff,

v.                                                                                       Case No. 06-13684
                                                                                    Hon. Sean F. Cox

HANTZ SOCCER U.S.A., LLC,

      Defendant.
_____

**OPINION AND ORDER**

      This matter is before the Court on Plaintiff's Motion for preliminary injunction. Both parties fully briefed the issues and a hearing was held September 21, 2006. For the following reasons, the Court denies Plaintiff's Motion.

**I.    BACKGROUND**

      This action arises out of alleged trademark infringement. Plaintiff, Ignition Athletic Performance Group, is a sports organization that provides sports-specific training and related services under the name "Ignition." Its only facility is located in Cincinnati, Ohio. Plaintiff offers training related to several major sports, including soccer, basketball, football, hockey, *etc*. Plaintiff's offerings include camps that provide skill, fitness, nutritional, and psychological training relative to the different sports. Plaintiff also sponsors several Cincinnati area teams and events, including a soccer team in the United Soccer League - Second Division, the Cincinnati

Kings. The Kings' jerseys bear the Ignition logo.

On February 5, 2005, Plaintiff applied for trademark protection. The Ignition mark and logo was registered with the United States Patent and Trademark Office on March 5, 2006.

On September 12, 2005, Defendant, Hantz Soccer USA, announced that it would operate a soccer team in the Major Indoor Soccer League. On April 19, 2006, the team name of "Detroit Ignition" was revealed. Also on April 19th, Defendant announced that it would operate Goose's All-Star Soccer Camps, which provides soccer instruction to youth players. The Detroit Ignition season begins on November 4, 2006.

Plaintiff filed a Complaint on August 18, 2006, alleging: (1) federal service mark infringement; and (2) trademark infringement. It also seeks declaratory judgment. Plaintiff also filed a Motion for temporary restraining order and preliminary injunction on August 18, 2006. The Court issued an Order denying a temporary restraining order on August 24, 2006 [Doc. 8].

## II.   STANDARD OF REVIEW

In considering injunctive relief, the district court must take into account: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Company v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). No single factor is dispositive. The court must balance the factors to determine whether they weigh in favor of an injunction. *Id*. The primary purpose of a preliminary injunction is to maintain the status quo. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The proof required to obtain a preliminary injunction is "much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "[P]reliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Id*. (citation omitted).

### III.   ANALYSIS

#### A.   Likelihood of Success on the Merits

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). A district court must examine and weigh eight factors to determine whether a likelihood of confusion exists:

1. strength of the senior mark;
2. relatedness of the goods or services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. the intent of defendant in selecting the mark; and
8. likelihood of expansion of the product lines.

*Id*. "When applying these factors to a given case, a court must remember that these factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely...[e]ach case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id*. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are

3

affiliated in some way." *Id*.

### 1. Strength of the Senior Mark

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music*, 109 F.3d at 280. "When assessing its strength, a court will place a trademark into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary." *Id*. The categories range in strength from lowest (generic), to highest (arbitrary).

Plaintiff's mark is arbitrary. "An 'arbitrary' mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers." *Id*. While the word "ignition" has an everyday meaning, that meaning is not indicative of Plaintiff's product - sports training and services.

However, "assigning a category to a mark constitutes only a single step in determining the strength of the mark." *Daddy's Junky Music*, 109 F.3d at 281.

"The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace." *Homeowner's Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). "A mark is strong if it is highly distinctive, *i.e.*, if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." *Id*.

Plaintiff's mark is not strong because it lacks recognition by the public outside the

4

Cincinnati area.

Plaintiff's only facility is in the Cincinnati area, and that appears to be where most of its customers come from.  It has 12 full-time employees, plus additional training staff when necessary.  While Plaintiff asserted at the hearing that it has customers from Michigan, it was only able to identify three individuals.  Plaintiff's advertising is primarily focused on the Cincinnati area.  The only national advertising Plaintiff noted at the hearing was a reference on the cable television show "Real Sports."  The exhibits provided by Plaintiff at the hearing advertise camps and events in the Cincinnati area.  Additionally, Plaintiff provides training in all major sports, and is not distinctly involved with soccer.

Based on the facts and evidence presented, Plaintiff's mark has a low degree of recognition outside the Cincinnati area.  Further, the recognition Plaintiff's mark enjoys is as a provider of sports training in general, not soccer training specifically.  This factor weighs against Plaintiff.

### 2. Relatedness of the Goods or Services

If parties compete directly, confusion is likely if the marks are sufficiently similar. *Daddy's Junky Music*, 109 F.3d at 282.  "[I]f the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors." *Id*.  Lastly, if the goods or services are unrelated, confusion is unlikely. *Id*.  "Services and goods are 'related' not because they coexist in the same broad industry, but are 'related' if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Id*. at 282-283.

Plaintiff argues it is in direct competition with Defendant because Defendant contracted with High Velocity Sports ("HVS"), which provides athletic training and health services. As part of the agreement, Defendant will receive brand placement throughout the HVS facility. Plaintiff concludes that the Detroit Ignition name is being used in connection with athletic training services. [Motion, p. 13].

The procurement of a training facility for Defendant's players is not a service or good being marketed. Even if Defendant's name appears throughout the facility advertising that it uses HVS for training, Defendant is not offering training as a service. Thus, there is no competition, and hence no likely confusion with respect to HVS.

Plaintiff also contends it is in direct competition with Defendant because Defendant operates a soccer camp for youth players using the name "Detroit Ignition." However, Plaintiff fails to establish that it competes for the same customers. There is no evidence that Defendant solicits camp participants from the Cincinnati area. Moreover, the parties do not offer identical services. Plaintiff offers much broader training than Defendant. Plaintiff's programs focus on nutrition, fitness and psychological aspects in addition to improving soccer skills. Defendant's camps only offer training with respect to soccer specific skills.

Lastly, Plaintiff concedes it is not in direct competition with Defendant to operate a soccer team, but does point out that it sponsors the Cincinnati Kings. However, the Kings' and the Detroit Ignition are in different leagues, and do not play in the same cities.

This factor weighs against Plaintiff.

### 3. Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music*, 109 F.3d

at 283.  "When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks."  *Id*.  "[C]ourts must view marks in their entirety and focus on their overall impressions, not individual features."  *Id*.  The relevant inquiry for similarity is whether "the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression of the other party's mark."  *Wynn Oil Company v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988).

The prominent feature in both marks is undoubtedly the word "Ignition."  Defendant's addition of the geographic identifier "Detroit" does little to reduce the similarity.  See *Midwest Guaranty Bank v. Guaranty Bank*, 270 F.Supp.2d 900, 915-916 (E.D. Mich. 2003).  Notwithstanding any dissimilarity in the parties' logos, the marks are similar.  The pronunciation and verbal translation of the prominent feature, "Ignition," is identical.  This factor weighs in favor Plaintiff.

### 4. Evidence of Actual Confusion

Plaintiff conceded in its Motion and at the hearing that it does not have evidence of actual confusion.  This factor is not significant.  *Daddy's Junky Music*, 109 F.3d at 284.

### 5. Marketing Channels Used

This factor requires the Court to "consider the similarities or differences between the predominant customers of the parties' respective goods or services...a court must determine whether the marketing approaches employed by each party resemble each other."  *Id*. at 285.

Plaintiff failed to offer any evidence that the parties use similar marketing channels or compete for the same customers.  The vast majority of Plaintiff's advertising is directed to the

Cincinnati area. Additionally, some of the Exhibits regarding Plaintiff's advertising efforts reveal that Plaintiff advertises as a *sports training* provider, not a *soccer training* provider. [Exhibits 125, 128, 129]. Lastly, Plaintiff's attempts at radio and television advertising, in the Cincinnati area, were described at the hearing as "occasional." Plaintiff admitted that the last time it advertised on television was "last November."

This factor weighs against Plaintiff.

### 6. Likely Degree of Purchaser Care

"Generally, in assessing the likelihood of confusion to the public, the standard used by the court is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion." *Daddy's Junky Music*, 109 F.3d at 285.

Plaintiff did not offer any evidence of the level of care used when purchasing its or Defendant's products, other than to conclude that because the products are expensive and involve a time commitment, it is reasonable to assume buyers either have expertise or use a higher standard of care. This factor is not significant.

### 7. Intent of Defendant in Selecting the Mark

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Id.* at 286.

Plaintiff admits it has no evidence that Defendant selected its mark in order to capitalize on Plaintiff's reputation.

8

This factor is not significant.

### 8.     Likelihood of Expansion of the Product Lines

"A strong possibility that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Id*. at 287 (citation omitted).

Plaintiff claims there is a "very real possibility" that it will franchise its training program to other locations in the United States. However, Plaintiff does not identify when, how certain, or where the expansion is possible. The Plaintiff did state the it may build a soccer stadium for the Kings, called the Ignition stadium. However, the stadium would be located in Cincinnati.

This factor weighs against Plaintiff.

### 9.     Overall Likelihood of Confusion

The ultimate question is whether there is a likelihood that the public will think the two marks are affiliated. Based on the facts and evidence presented by Motion and at the hearing, there is no likelihood of confusion that the public will think the indoor soccer team known as the "Detroit Ignition" is affiliated with the Cincinnati area sports training company "Ignition."

Accordingly, there is no likelihood of success on the merits. This factor weighs against the issuance of an injunction.

### B.     Irreparable Harm

If Plaintiff prevails on the likelihood of success on the merits factor, irreparable harm is presumed in a trademark infringement case. "As to irreparable harm, our Circuit requires no particular finding of its likelihood to support injunctive relief in cases of this type, for irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears

from infringement or unfair competition." *Lorillard Tobacco Company v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381-382 (6th Cir. 2006)(citing *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999)).

However, the Court finds there is no likelihood of success on the merits, accordingly, irreparable harm is not presumed. Plaintiff failed to offer any evidence of irreparable harm.

This factor weighs against the issuance of an injunction.

### C.   Substantial Harm

The balance of harms tips heavily in favor of Defendant. If the Court issues an injunction, Defendant must cease using the name or logo "Detroit Ignition." Defendant's season is scheduled to get underway in November 2006. By contrast, if the Court declines to issue an injunction, Plaintiff will not suffer any harm. At the hearing, Plaintiff identified its potential harm as the likelihood of confusion. The Court finds there is no likelihood of confusion. Additionally, Plaintiff admitted it has no evidence of actual confusion and has not suffered any harm attributable to the existence of the Detroit Ignition.

This factor weighs against the issuance of an injunction.

### D.   Public Interest

Plaintiff's only treatment of this factor is to quote *Midwest Guaranty Bank, supra*, for the proposition that there is a public interest in protecting one's trademark rights and avoiding confusion in the market place.

The Court found there is no likelihood of confusion. This factor weighs against the issuance of an injunction.

## IV.   CONCLUSION

The Court having weighed the relevant factors and considered the evidence presented, finds the factors weigh against the issuance of an injunction.  Plaintiff's Motion is denied.

**IT IS SO ORDERED.**


s/Sean F. Cox
Sean F. Cox
United States District Judge

**Dated:  September 22, 2006**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on September 22, 2006, by electronic and/or ordinary mail.**

s/Jennifer Hernandez
Case Manager

11