UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IGNITION ATHLETIC PERFORMANCE
GROUP, LLC,

      Plaintiff,

v.                                                                                                Case No. 06-13684
                                                                                              Hon. Sean F. Cox

HANTZ SOCCER U.S.A., LLC,

      Defendant.
_____

## OPINION AND ORDER

      This matter is before the Court on Plaintiff's Motion for partial summary judgment and Defendant's Motion for summary judgment. Both parties have fully briefed the issues and a hearing was held June 28, 2007. For the following reasons, the Court **DENIES** Plaintiff's Motion for partial summary judgment and **GRANTS** Defendant's Motion for summary judgment.

### I.   BACKGROUND

      This action arises out of alleged trademark infringement. Plaintiff, Ignition Athletic Performance Group, is "a sports organization that provides comprehensive sports-specific training, related health services and sports marketing initiatives under the 'Ignition' name." Plaintiff's facility is in Cincinnati, Ohio. Defendant, Hantz Soccer U.S.A., Inc., operates the "Detroit Ignition," an indoor soccer team in the Major Indoor Soccer League ("MISL").

      On February 5, 2005, Plaintiff applied for trademark protection. The 'Ignition' mark and

logo were registered with the United States Patent and Trademark Office on March 5, 2006.

On September 12, 2005, Defendant announced that it would operate a soccer team in the MISL. On April 19, 2006, the team name of "Detroit Ignition" was revealed. Also on April 19th, Defendant announced that it would operate Goose's All-Star Soccer Camps, to provide soccer instruction to youth players. The Detroit Ignition's inaugural season began on November 4, 2006.

Plaintiff filed a Complaint on August 18, 2006, alleging: (1) federal service mark infringement in violation of 15 U.S.C. § 1114; and (2) trademark infringement in violation of 15 U.S.C. § 1125(a). Plaintiff also seeks a declaratory judgment. Plaintiff filed a Motion for temporary restraining order and preliminary injunction on August 18, 2006. The Court issued an Order denying a temporary restraining order on August 24, 2006 [Doc. 8]; and an Order denying a preliminary injunction on September 22, 2006 [Doc. 21]. An appeal is pending on the Court's order denying preliminary injunction.

On April 9, 2007, Defendant filed a Motion for summary judgment. Also on April 9, 2007, Plaintiff filed a Motion for partial summary judgment. Plaintiff does not seek summary judgment on its request for declaratory judgment.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have

[the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. ANALYSIS

In order to withstand summary judgment, Plaintiff must establish that Defendant's trademark creates a likelihood of confusion regarding the origin of the services offered by Plaintiff and Defendant. *Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 630 (6th Cir. 2002). "The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997).

A district court must examine and weigh eight factors to determine whether a likelihood of confusion exists:

1. strength of the senior mark;
2. relatedness of the goods or services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. the intent of defendant in selecting the mark; and
8. likelihood of expansion of the product lines.

*Id*. "When applying these factors to a given case, a court must remember that these factors imply no mathematical precision, but are simply a guide to help determine whether confusion is

3

likely...[e]ach case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Id*. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id*. "The determination of whether a likelihood of confusion exists is a mixed question of fact and law." *Therma-Scan*, 295 F.3d at 630. Disputes regarding the evidence that pertains to the eight factors presents a factual issue. *Id*. However, the determination of the likelihood of confusion based on a given set of foundational facts is a legal conclusion. *Id*. at 631. The parties both conceded at the hearing that there are no genuine issues of material fact on any of the factors. Consequently, the Court must determine on the facts and evidence presented by the parties whether a likelihood of confusion exists.

  **A.**  **Strength of the Senior Mark**

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music*, 109 F.3d at 280. "When assessing its strength, a court will place a trademark into one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary." *Id*. The categories range in strength from lowest (generic), to highest (arbitrary).

As this court found when ruling on Plaintiff's motion for preliminary injunction, Plaintiff's mark is arbitrary. "An 'arbitrary' mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers." *Id*. While the word "ignition" has an everyday meaning, that meaning is not indicative of Plaintiff's product - sports training and

4

services.  Similarly, in *Daddy's Junky Music*, the court found the marks "Daddy's" and "Daddy's Junky," "although consisting of words with recognized meaning in everyday speech, do not have any inherent connection with the sale of musical instruments." *Id*. at 281.  Thus, the court found the marks were arbitrary.

However, "assigning a category to a mark constitutes only a single step in determining the strength of the mark." *Daddy's Junky Music*, 109 F.3d at 281.  "The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace." *Homeowner's Group, Inc. v. Home Marketing Specialists, Inc*., 931 F.2d 1100, 1107 (6th Cir. 1991).  "A mark is strong if it is highly distinctive, *i.e*., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." *Id*.

Plaintiff's mark is strong in the Cincinnati, Ohio area.  Plaintiff conducts extensive advertising and sponsorships in Cincinnati, including the sponsorship of the Cincinnati Kings.  The Cincinnati Kings are a soccer team in the United Soccer League.  Plaintiff relies on the Cincinnati Kings to establish that its sponsorship efforts reach beyond the Cincinnati area.  Plaintiff points out that the Cincinnati Kings play in "Richmond, Virginia, Charlotte, North Carolina, New Hampshire, Pittsburgh, Pennsylvania, Harrisburg, Pennsylvania, Western Massachusetts, Wilmington, Delaware and Long Island, New York." [Plaintiff's Motion, p.14].  The 'Ignition' logo is emblazoned on the Kings' jerseys, and, according to Plaintiff, is seen by the thousands of fans in the cities where the Kings travel.

Defendant argues that Plaintiff does not conduct "any significant amounts of advertising, but rather seeks to establish contacts within the youth sports community through associations

5

with local publications and events in and around the Cincinnati area." [Defendant's Motion, p.5]. Defendant relies on *Therma-Scan* for the proposition that because, according to Defendant, Plaintiff does not conduct significant advertising, Plaintiff's mark is not strong. In *Therma-Scan*, the plaintiff performed infrared thermal imaging examinations of the human body, using the trademark "Therma-Scan." The defendant manufactured hand held electronic ear thermometers, using the trademark "Thermoscan." When analyzing the strength of the Therma-Scan trademark, the court noted that the plaintiff "does not conduct vigorous advertising, but instead seeks to establish contacts within the medical community and relies upon periodic discussions of its services on radio shows." *Therma-Scan,* 295 F.3d at 632. Nonetheless, the court stated that "[a] company's lack of advertising does not necessarily reduce the strength of its trademark *** [but] [t]he absence of any advertising...diminishes the likelihood that most people will be familiar with a company's mark, absent evidence that its goods or services have achieved broad public recognition." *Id*. The court found that the plaintiff's trademark was not strong because it was categorized as descriptive, and because it lacked broad public recognition. *Id*. Because Plaintiff's mark is arbitrary and Plaintiff conducts advertising and sponsorships in Cincinnati, *Therma-Scan* is not helpful.

Also not helpful, is Plaintiff's argument regarding Defendant's efforts to advertise the "Detroit Ignition" mark. The "strength of the mark" factor is concerned only with the strength of Plaintiff's "Ignition" mark, in order to determine if it is deserving of protection, not the strength of Defendant's mark. *Therma-Scan*, 295 F.3d at 630 ("the strength of the plaintiff's mark"); *Daddy's Junky Music*, 109 F.3d at 280 ("strength of the senior mark"); *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996)("the strength of the

6

plaintiff's mark") and *Homeowners Group*, 931 F.2d at 1106 ("strength of the plaintiff's mark").

Based on the facts in this case, the Plaintiff's "Ignition" mark is strong in the Cincinnati area. Nearly all of Plaintiff's advertising efforts and sponsorships are in the Cincinnati area. Additionally, Plaintiff's facility is located in Cincinnati. Plaintiff also claims it sent out direct mailers to 11,000 people. Although Plaintiff did not identify where the mailers were sent, presumably, based on the number of mailers sent and the location of Plaintiff's facility, the mailers were sent out to people in the Cincinnati area.

The only advertising Plaintiff identifies of its mark outside of the Cincinnati area is the fact that it sponsors the Cincinnati Kings, whose jerseys are emblazoned with the "Ignition" mark. The Cincinnati Kings play in various cities outside of Ohio. "A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." *Homeowners Group*, 931 F.2d at 1107. The facts do not demonstrate "wide and intensive advertisement" outside of the Cincinnati area. The fact that the Cincinnati Kings play in other cities wearing jerseys with the "Ignition" logo does little to establish the "Ignition" logo as the hallmark of Plaintiff's sports training services. There is no indication that any advertising is conducted in the cities where the Cincinnati Kings play that informs the spectators what the logo stands for. This court's finding that Plaintiff's mark is arbitrary and thus inherently distinctive, is of limited value. A mark may be arbitrary, but have "little customer recognition or 'strength' in the market, or perhaps have high recognition which is limited to a particular product or market segment." *Id*. Plaintiff must establish that consumers in the marketplace recognize "Ignition" as a mark which brings Ignition

7

Athletic Performance Group to mind. *Id*. at 1108. Plaintiff has failed to do so. Plaintiff's "Ignition" mark may have high recognition in the Cincinnati area, but it is limited to that market segment.

This factor weighs against the federal protection of the Ignition mark outside of the Cincinnati area. Accordingly, this factor does not weigh in Plaintiff's favor.

B.      **Relatedness of the Goods or Services**

There are three categories regarding the relatedness of the goods or services with which trademarks are associated: First, if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are unrelated, confusion is unlikely. *Therma-Scan*, 295 F.3d at 632 (citing *Daddy's Junky Music*, 109 F.3d at 282). "These categories are helpful in gauging how important relatedness may be in the ultimate likelihood of confusion determination." *Homeowners Group*, 931 F.2d at 1108.

Both parties offer soccer camps. Plaintiff does not offer a comparable service to Defendant's operation of the Detroit Ignition soccer team. However, Plaintiff does contend that because it sponsors a soccer team, the Cincinnati Kings, there is a likelihood of confusion that consumers may believe Plaintiff also sponsors Defendant's team, the Detroit Ignition.

Plaintiff contends that both parties offer the same soccer camps, designed to improve the participant's soccer performance. Plaintiff also alleges that both parties offer the participation of soccer players from the Cincinnati Kings (Plaintiff) and the Detroit Ignition (Defendant). Defendant distinguishes its soccer camp from Plaintiff's by arguing that the type of training

8

offered during the camps is fundamentally different.

Assuming, *arguendo*, that Plaintiff is correct and the parties' soccer camps are identical services, the two camps still fall in the second category - and indicate that the likelihood of confusion determination will rest on other factors. Plaintiff and Defendant are not competitive. There is no evidence that Plaintiff and Defendant: operate their camps in the same market; advertise their camps in the same market; or even have participants from the other parties' area. In *Therma-Scan*, the court found that even though the parties both coexist in the "very broad industry of medical applications of thermology" their goods were not so related that confusion was likely to occur because they used the technology differently and "because they market their goods and services to different segments of the population." *Therma-Scan*, 295 F.3d at 633. The parties are not competitive.

The same reasoning applies to the sponsorship of the Cincinnati Kings. The Cincinnati Kings do not regularly play in any of the cities that the Detroit Ignition plays. Moreover, they play in different leagues. Plaintiff does offer that the Cincinnati Kings played the Michigan Bucks in Michigan on June 28, 2006, but there is no indication that this was a regular occurrence. The relatedness of the parties' services is not helpful in the determination of the likelihood of confusion because they are not competitive.

### C. Similarity of the Marks

"When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *Daddy's Junky Music*, 109 F.3d at 283. "[C]ourts must view marks in their entirety and focus on their overall impressions, not individual features." *Id*. This factor is of considerable weight. *Id*. The relevant inquiry for similarity is whether "the

9

appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression of the other party's mark." *Wynn Oil Company v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988).

As held in this Court's Order denying preliminary injunction:

> The prominent feature in both marks is undoubtedly the word "Ignition." Defendant's addition of the geographic identifier "Detroit" does little to reduce the similarity. See *Midwest Guaranty Bank v. Guaranty Bank*, 270 F.Supp.2d 900, 915-916 (E.D. Mich. 2003). Notwithstanding any dissimilarity in the parties' logos, the marks are similar. The pronunciation and verbal translation of the prominent feature, "Ignition," is identical.

[Doc. 21, p.7]. Moreover, both marks use a similar color scheme of black, yellow and red. Accordingly, this factor weighs in favor of Plaintiff.

### D. Evidence of Actual Confusion

Plaintiff concedes it does not have evidence of actual confusion. This factor is not significant. *Daddy's Junky Music*, 109 F.3d at 284.

### E. Marketing Channels Used

This factor requires the Court to "consider the similarities or differences between the predominant customers of the parties' respective goods or services...a court must determine whether the marketing approaches employed by each party resemble each other." *Id*. at 285. The determination consists of "considerations of how and to whom the respective goods or services of the parties are sold." *Homeowners Group*, 931 F.2d at 1110. "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases." *Therma-Scan*, 295 F.3d at 636.

The only services at issue for this factor are the parties' soccer camps. Plaintiff does not operate a soccer team, so the marketing channels used to market tickets for Detroit Ignition

10

games to spectator sports fans are irrelevant.

Plaintiff contends that it markets to the same group as Defendant. Defendant alleges that for its soccer camps, it targets "metro-Detroit parents and their children, ages 4 through 18..." [Defendant's Undisputed Facts, ¶7]. With regard to its soccer camps, Defendant alleged at the hearing that it conducts mailing of brochures to individuals who have attended Detroit Ignition games; makes brochures available at its soccer camps; and has relationships with other indoor soccer teams. Plaintiff declares that it targets "athletes of all ages and abilities, including recreational, young student, college and professional athletes." [Plaintiff's Exhibit 1, ¶3]. There is overlap in the age of the customer the parties' seek because both offer soccer camps to children between the ages of 4 and 18. However, the parties do not target the same customers because Plaintiff does not market to metro-Detroit area children and Defendant does not market its soccer camps to Cincinnati area children.[1] Both parties assert that they market through sponsorships, partnerships with companies, operation of Internet websites, and mailings.

Based on the evidence presented, the parties use similar marketing methods directed at different customers. If the parties were in the same geographic area this factor would be of more significance. However, the parties are in separate geographic locations and conceded at the hearing that they do not market their camps to customers outside of their local area. Accordingly, the Court does not find this factor significant.

---

[1]This court is aware that the Sixth Circuit does not employ the so-called "*Dawn-Donut* rule" set forth in *Dawn Donut v. Hart's Food Stores*, 267 F.2d 358, 364 (2nd Cir. 1959); that case established a per se rule that a likelihood of confusion does not exist so long as the parties operate in separate and distinct geographical markets. Nonetheless, that fact is properly considered in the likelihood of confusion analysis under the eight factor test applied in the Sixth Circuit, as evidenced by the inclusion in the analysis of a factor devoted to whether the parties are likely to enter each other's markets.

### F. Likely Degree of Purchaser Care

"Generally, in assessing the likelihood of confusion to the public, the standard used by the court is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion." *Daddy's Junky Music*, 109 F.3d at 285.

Plaintiff claims that the general rule should be followed, that the buyer is typical and exercises ordinary caution. Defendant contends that a parent looking for summer camp for their child would be a sophisticated buyer, or an ordinary buyer who must use a higher degree of care.

For purposes of choosing between the parties' soccer camps, the ordinary buyer would be expected to use a higher degree of care. The parent would be entrusting their child to the camp. Additionally, the camps at issue are in two different states. Naturally, a parent would be expected to exercise a high degree of care when considering an out of state soccer camp.

This factor weighs in favor of Defendant.

### G. Intent of Defendant in Selecting the Mark

Plaintiff admits it has no evidence that Defendant selected its mark in order to capitalize on Plaintiff's reputation. [Plaintiff's Motion, p.19].

This factor is not significant.

### H. Likelihood of Expansion of the Product Lines

"A strong possibility that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is

infringing." *Daddy's Junky Music,* 109 F.3d at 287 (citation omitted). This factor is only relevant if there is an affirmative showing, evidence that the parties are not likely to expand is irrelevant. *Id*.

Plaintiff argues that "Ignition has intended to franchise the Ignition brand throughout the Midwest, but chose to first refine its business model and its operation to ensure it was prepared for expansion." [Plaintiff's Motion, p.19]. Plaintiff directs the court to a memorandum of a "licensing meeting" held on May 9, 2005. [Motion, Exhibit 3]. Plaintiff does not indicate whether plans to franchise are imminent or are still just being considered. Kevin Naylor, Plaintiff's general manager, submitted an affidavit detailing several expansion opportunities. [Motion, Exhibit 2]. However, Plaintiff conceded at the hearing that no affirmative steps have been taken to expand its business to the metro-Detroit area. A two year old memo identifying possible cities for expansion, without any further evidence of plans to expand, does not evidence a "strong possibility" of expansion.

This factor is not significant.

### I. Balancing the Factors

The only factors this Court finds relevant are: the strength of the mark; similarity of the marks; and the degree of purchaser care. The Plaintiff's mark is only strong in the Cincinnati area. The diffuse instances of the use of Plaintiff's mark in areas outside of Cincinnati are not significant enough to garner federal protection. The Court does note that the parties' marks are similar, but the marks are used in separate geographical areas. Further, the consumers of the parties' soccer camps are local area children. Their parents are likely to use a high degree of care when registering their children for soccer camps. With respect to confusion over

sponsorship, the Detroit Ignition do not play in the same league, or in any of the same cities, as the Cincinnati Kings. All of these factors militate towards a finding of a low likelihood of confusion between Plaintiff and Defendant's marks. Accordingly, the Court finds there is no trademark infringement based on the undisputed facts of this case.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for partial summary judgment and **GRANTS** Defendant's Motion for summary judgment.

**IT IS SO ORDERED.**

      **S/Sean F. Cox**
      **Sean F. Cox**
      **United States District Judge**

**Dated: July 17, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on July 17, 2007, by electronic and/or ordinary mail.**

      **S/Jennifer Hernandez**
      **Case Manager**